UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------- X
                                :

**JESSICA VALDEZ**,                         :

                  Plaintiff,          :

                                :    **MEMORANDUM DECISION AND**

           – against –           :    **ORDER**

                                :    20-CV-2570 (AMD) (SIL)

**MICHPAT & FAM, LLC**, *doing business as Dairy*    :
*Queen Grill & Chill Restaurant*, and **PATRICIA**
**NAPPO**, *also known as Patricia Demint*,          :

                                :

                 Defendants.

--------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

The plaintiff brings a claim under the Fair Labor Standards Act ("FLSA") for unpaid

overtime on behalf of herself and others similarly situated (ECF No. 1 ¶¶ 48-54), as well as

claims under the New York Labor Law ("NYLL") and New York Compensation Codes Rules &

Regulations ("NYCRR") for unpaid overtime, spread-of-hours violations, untimely payments,

and inaccurate wage statements and notices on behalf of herself and others similarly situated.[1]

The plaintiff moved on March 26, 2021 for conditional certification of an FLSA collective action

with respect to the FLSA claim, as well as certification of a Federal Rule of Civil Procedure

23(b)(3) class action with respect to the NYLL and NYCRR claims.  In a comprehensive

decision on January 6, 2022, Magistrate Judge Steven I. Locke recommended that the plaintiff's

motion be granted in part and denied in part.  The defendants filed their objections to Judge

Locke's conclusions on January 20, 2022 under Federal Rule of Civil Procedure 72.  For the

reasons below, I reject the defendants' challenges.

---

[1] The plaintiff also brings claims under the FLSA, NYLL and NYCRR for the defendants' failure to pay
minimum wage, but does so only on behalf of herself.

## BACKGROUND

### I.    Plaintiff's Case[2]

The defendant MichPat & Fam, LLC ("MichPat") operates the Dairy Queen franchise in Medford, New York.  (ECF No. 1 ¶ 12.)  The defendant Patricia Demint is MichPat's managing member and general manager, and oversees "the daily operation of this Dairy Queen franchise and . . . controls the terms and conditions of employment for all of Dairy Queen's employees, in that she had the power to hire and fire all employees, supervise and control employee work schedules, determine the rate and method of wages paid to all employees, and was and is responsible for maintaining employment records."  (ECF No. 1 ¶ 31.)

In December of 2017, Demint hired the plaintiff to work at MichPat's Dairy Queen.  The plaintiff "performed manual work as a grill-line worker for hourly pay until approximately mid-May 2018," when she was promoted to manager.  (*Id.* ¶ 34; ECF No. 33 ¶ 3.)  Nevertheless, she "continued to perform her duties as a manual grill-line worker, and also ran the ice cream section, prepared the work schedules, ordered supplies, cleaned the restaurant and equipment, ensured the food was cooked at the right temperature and that the staff wore proper equipment, and hired and fired staff" (*id.*); "virtually 100% of her work[ ] was spent completing manually laborious tasks, such as, e.g., cooking, cleaning, serving food, checking food temperatures, and handling store equipment orders as they arrived."  (ECF No. 1 ¶ 35; ECF No. 33 ¶ 5.)  The plaintiff worked five to six days each week, between 32 and 45 hours per week, and was paid on a bi-weekly basis as if she were an hourly employee.  (ECF No. 1 ¶¶ 32, 36, 37; ECF No. 33 ¶ 8.)  On October 25, 2019, Demint fired the plaintiff.  (ECF No. 33 ¶¶ 2, 4.)

---

[2] This section is drawn from the complaint (ECF No. 1), and the plaintiff's declaration in support of her motion for both FLSA conditional certification and Rule 23 certification.  (ECF No. 33.)

The plaintiff alleges that MichPat and Demint avoided paying her for overtime by logging hours that she worked in one week as if they occurred in a different week, so that she never had more than 40 hours in any given week.  (ECF No. 1 ¶ 39; ECF No. 33 ¶ 7.)  Demint also instructed the plaintiff and other managers to delete and move their employees' hours, which she coordinated over a text messaging application; Demint kept her scheme secret by using her employees' punch-codes in the time logging system when she deleted or moved their hours.  (ECF No. 33 ¶¶ 9-10, 12-13.)  The scheme affected at least 20 other employees, whom the plaintiff lists by name.  (ECF No. 33 ¶ 10.)

The defendants also asked the plaintiff to work off-the-clock (*id.* ¶ 7), and to work shifts of more than 10 hours, but did not provide spread-of-hours pay.  (ECF No. 1 ¶ 42.)  Nor did the defendants pay the plaintiff directly; they deposited her paychecks into an account held by Demint, who "from time-to-time and at her whim, [would] deposit some money" into the plaintiff's account.  (*Id.* ¶ 41.)  The defendants did not provide the plaintiff with an accurate wage statement, or with an accurate wage notice when she was hired.  (*Id.* ¶ 43-44.)  They also paid her less than minimum wage for several months in 2019.  (*Id.* ¶ 3.)

The plaintiff claims that the defendants violated the overtime provisions of the FLSA, NYLL and NYCRR, the minimum wage provisions of the FLSA, NYLL and NYCRR, the spread-of-hours requirements under the NYLL and NYCRR, the weekly-pay requirements for manual workers under the NYLL, and the accurate wage statements and wage notices provisions of the NYLL.  (*Id.* ¶¶ 48-94.)  As explained below, the plaintiff brought this action on behalf of herself, individually, as well as on behalf of "all others similarly-situated" (*id.* at 1), and seeks equitable relief and monetary damages.  (*Id.* at 20-22.)

### a.    Corroborating Evidence

The plaintiff's testimony, as well as that of MichPat's 30(b)(6) deponent Michelle Robey,

corroborates the allegations in the complaint and the plaintiff's declaration.  Robey explained

that there were "two overall classifications" of employees at MichPat's Dairy Queen—"crew or

manager."  (ECF No. 32-5 at 54:2-4.)  The crew team covered four sections of the restaurant:

"grill," "chill," "prep," and "front counter."  (*Id.* at 111:11-17.)  Management had three tiers—

assistant manager, manager and general manager.  (*Id.* at 51:12-18.)  Crew employees and

managers were responsible for overnight and after-close tasks, including cleaning dishes and

equipment, as well as receiving deliveries and stocking inventory.  (*Id.* at 32:7-34:14.)  Crew

employees had almost no administrative responsibilities, although they were expected to

complete harassment training, and they had to sign off on cleanliness and quarantine

requirements during the pandemic.  (*Id.* at 84:8-85:4.)  Assistant managers and managers

"definitely had more administrative responsibilities" (*id.* at 85:5-7), but 90 percent of their

responsibilities were non-administrative.  (*Id.* at 86:18-21.)  According to Robey, the managers

were "very hands-on" and did "the same type of work as the crew people."  (*Id.* at 87:4-8.)  All

employees were paid by the hour (*id.* at 56:13-57:6), and on a bi-weekly basis, from the time the

store opened through March of 2020, when the company switched to paying every week because

Robey "felt that the employees needed more regular access to their pay."  (*Id.* at 83:10-23.)

Between 2017 and 2019, the plaintiff worked in various positions as a crew member and

manager—she was a grill worker (*id.* at 109:25-110:21; ECF No. 32-6 at 16:14-22), cashier

(ECF No. 32-5 at 109:18-24), maintenance manager (ECF No. 32-6 at 73:22-75:3) and assistant

manager.  (ECF No. 32-5 at 110:22-111:10.)  The plaintiff was "only paid one salary," regardless

of her position, because, as Robey explained, her salary "was tied to her date of employment, not

to the specific position."  (*Id.* at 111:4-10.)

As for the alleged hour-shifting scheme, both Robey and the plaintiff testified that an employee's timecard could be changed. (ECF No. 32-5 at 105:5-107:17; ECF No. 32-6 at 39:13-23.) For example, if it appeared that an employee "worked in excess of a number of hours that required a break," Robey called her sister or another manager to see whether the employee took a half-hour break. (*Id.* at 121:19-123:4.) If no one could confirm that the employee took a break, Robey would assume that the employee took a break "if an employee worked over six and a half hours," and deduct the employee's hours accordingly. (*Id.* at 122:20-123:4.) According to the plaintiff, Demint said that "sometimes she'll take some of the days and just move them to a different day because we're not supposed to work long hours" and "if we didn't get a break she would add 30 minutes onto it and give us a break." (ECF No. 32-6 at 38:23-39:4.) Managers, including Demint, also changed employees' hours when they worked "past their time." (*Id.* at 38:11-39:4, 41:20-42:2.) Robey explained that employees could see whether their hours were adjusted if they printed out their timecards at the cash register. (ECF No. 32-5 at 105:5-107:17.)

### b. Defendants' Response[3]

The defendants cite declarations from Robey, Demint and six other MichPat employees that essentially refute the allegations made in the complaint. (ECF Nos. 36, 37, 38, 39, 40, 41, 42, 43.) According to Demint, 75 percent of the plaintiff's responsibilities were administrative rather than manual work. (ECF No. 39 ¶¶ 6-10, 12-13.) Robey and Demint stated that MichPat's employees rarely worked overtime, that any changes to their hours would be reflected

---

[3] A court's obligation to resolve factual disputes depends whether it is conditionally certifying an FLSA collective action or certifying a Rule 23 class action. An FLSA collective action must be conditionally certified "as long as the plaintiff['s] allegations are sufficient on their face to support certification—even if such allegations conflict with the account asserted by the defendants." *Gui Zhen Zhu v. Matsu Corp*, 424 F. Supp. 3d 253, 264 (D. Conn. 2020) (collecting cases). However, a district judge may certify a class "only after making determinations that each of the Rule 23 requirements has been met," and "such determinations can be made only if the judge resolves factual disputes relevant to each Rule 23 requirement." *In re Initial Public Offering Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006).

in an Edited Shifts report, and that Robey and Demint had no access to or knowledge of

employees' punch-codes.  (ECF Nos. 38, 39.)  Demint denied that she directed subordinates to

edit time records; she stated that employees could print out their records and figure out whether

their hours were changed, and that 12 of the 20 listed employees in the plaintiff's complaint were

minors who were not eligible to work overtime.  (ECF No. 39 ¶¶ 6-10, 12-13.)  The other six

declarations—all from current MichPat employees—echoed Robey and Demint's position that

the plaintiff was primarily an administrator rather than a manual worker; like Robey and Demint,

the employees also claimed that only they had access to their own punch-codes, that they

routinely checked their hours for mistakes, and that there were no changes to their hours unless

they forgot to clock in or out.  (ECF Nos. 36, 37, 40, 41, 42, 43.)

## II.    Collective and Class Actions

The plaintiff seeks certification of an FLSA collective action that includes herself and

"[c]urrent and former employees who during the applicable FLSA limitations period performed

any work for Defendants, who were paid on an hourly basis as manual workers, and who consent

to file a claim" (the "FLSA Plaintiffs").  (ECF No. 30 ¶ 15.)  The plaintiff alleged that the

defendants treated the FLSA Plaintiffs similarly because they performed similar tasks, were

subject to the same laws and regulations, were paid in the same or similar manner, were required

to work in excess of forty hours in a work week, and were not paid overtime as required under

the FLSA.  (*Id.* ¶¶ 16, 48-54.)

The plaintiff also seeks certification of a Rule 23(b)(3) class action, on behalf of herself

and "[c]urrent and former employees who during the applicable NYLL limitations period

performed any work for Defendants in New York, and who were paid on an hourly basis as

manual workers" (the "Rule 23 Plaintiffs").  (*Id.* ¶¶ 19, 21.)  In support of class certification, the

plaintiff alleged that the defendants employed at least 40 individuals who are putative members

of this class (*id.* ¶ 22), and that the following questions governed class members' claims and

predominate over questions solely affecting individual members:

> (1) the duties that Defendants required and require each Rule 23 Plaintiff to perform; (2) the manner of compensating each Rule 23 Plaintiff; (3) whether the Rule 23 Plaintiffs worked in excess of forty hours in a week; (4) whether Defendants failed to pay the Rule 23 Plaintiffs proper overtime compensation for all hours worked in excess of forty in a week; (5) whether Defendants failed to pay the Rule 23 Plaintiffs spread-of-hours pay when their workdays exceeded ten hours; (6) the frequency with which Defendants paid the Rule 23 Plaintiffs, specifically whether Defendants paid them all of their wages at least as frequently as on a weekly basis; (7) whether Defendants furnished and furnish the Rule 23 Plaintiffs with accurate wage statements on each payday containing the information required by NYLL § 195(3); (8) whether Defendants furnished and furnish the Rule 23 Plaintiffs with an accurate wage notice at the time of hire containing the information required by NYLL § 195(1); (9) whether Defendants kept and maintained accurate records of hours worked by the Rule 23 Plaintiffs; (10) whether Defendants kept and maintained records with respect to the compensation that they paid to the Rule 23 Plaintiffs for each hour worked; (11) whether Defendants have any affirmative defenses to any of the Rule 23 Plaintiffs' claims; (12) whether Defendants' actions with respect to the Rule 23 Plaintiffs were in violation of the NYLL and its supporting regulations; and (13) if so, what constitutes the proper measure of damages.

(*Id.* ¶ 23.) The plaintiff alleged that her claims are typical of the putative members' claims, as all

of them have worked for the defendants as hourly manual workers, and the defendants did not

pay them overtime, provide spread-of-hours pay, pay them on a weekly basis or provide accurate

wage statements and notices when they were hired. (*Id.* ¶¶ 24, 25, 27.) The plaintiff alleged that

she would adequately represent the putative class and that her counsel had substantial experience

in these kinds of labor disputes. (*Id.* ¶ 25.) She also alleged that any lawsuit by a putative

member would be identical to the one brought by her, and that maintaining a class action was

superior to any other method of litigation because separate litigation would create the risk of

inconsistent results. (*Id.* ¶¶ 38-39.)

### III.    Procedural History

On August 7, 2020, the defendants filed their answer to the plaintiff's complaint (ECF No. 15), which they amended on September 22, 2020.  (ECF No. 22.)  Several months later, on April 23, 2021, the plaintiff filed a motion for conditional certification of an FLSA collective action to recover unpaid overtime on behalf of:

> Current and former employees, who from the opening of Defendants' Dairy Queen restaurant until March 1, 2020, performed any work for Defendants and who were paid on an hourly basis as "crew" members, and/or assistant managers, and/or managers, and who consent to file a claim to recover damages for unpaid overtime compensation and liquidated damages that are legally due to them[.]

(ECF No. 30 at 1.)  The plaintiff also sought class certification under Federal Rule of Civil Procedure 23(b)(3) on behalf of:

> Current and former employees, who from the opening of Defendants' Dairy Queen restaurant until March 1, 2020, performed any work for Defendants in New York as "crew" members, and/or assistant managers, and/or managers, and who were paid on an hourly, bi-weekly basis[.]

(*Id.* at 2.)  The plaintiff asked that she be allowed to send notice via regular mail, e-mail and text message (*id.*), and provided a proposed notice to other individuals (ECF No. 32-7), a proposed e-mail notice and text notice (ECF Nos. 32-8, 32-9), and a proposed reminder notice.  (ECF No. 32-10.)  She also requested that the defendants post the proposed notice in certain locations in their restaurant, and that they provide to her a computer-readable data file that included contact and employment information for potential collective and class action members who worked for the defendants between December 1, 2017 and March 1, 2020.  (ECF No. 30 at 2.)

On April 26, 2021, I referred the motion to Magistrate Judge A. Kathleen Tomlinson.[4] On November 17, 2021, the case was reassigned from Judge Tomlinson to Judge Locke.  On

---

[4] I referred both motions to certify an FLSA collective action and to certify a Rule 23(b)(3) class action, even though the motion for conditional certification was not dispositive.  *See Chui v. Am. Yuexianggui of LI LLC*, No. 18-CV-5091, 2020 WL 3618892, at *1 n.1 (E.D.N.Y. July 2, 2020).

January 6, 2022, Judge Locke issued a report and recommendation ("R&R"), with the following

recommendations:

> [T]his matter should be conditionally certified as a FLSA collective action for a class defined as all current and former employees, who from April 23, 2018 to April 23, 2021, performed any work for Defendants and who were paid on an hourly basis as "crew" members, assistant managers, or managers, and who consent to file a claim to recover damages for unpaid overtime compensation and liquidated damages[.] . . .

> [T]his matter should be certified as a NYLL Rule 23 class action for a class defined as all current and former employees, who from the opening of Defendants' Dairy Queen restaurant on December 1, 2017 until March 1, 2020, performed any work for Defendants in New York as "crew" members, assistant managers, or managers, and who were paid on an hourly, bi-weekly basis[.]  . . .

> [T]he Named Plaintiff should revise her proposed notice consistent with [Judge Donnelly's] adoption or modification of this [R&R.] . . .

> [T]he Named Plaintiff should be permitted to send the notice to potential FLSA collective and NYLL Rule 23 class members via first-class mail, email, and text message, as well as to post it at Defendants' Dairy Queen location and send a reminder notice[.] . . .

> Defendants should be directed to provide the Named Plaintiff with a computer-readable data file containing the names, addresses, telephone numbers, email addresses, work locations, and dates of employment of all crew members, assistant managers, and managers employed by Defendants as hourly, non-exempt, overtime-eligible employees at any point between December 1, 2017 and March 1, 2020.

(*See* ECF No. 53 at 3-4.)  On January 20, 2022, the defendants filed their objections to Judge

Locke's R&R.  (ECF No. 55.)

## LEGAL STANDARD

Under Rule 72(a), a district judge reviewing a magistrate judge's order on a non-

dispositive motion must "consider timely objections and modify or set aside any part of the order

that is clearly erroneous or is contrary to law."  Fed. R. Civ. P. 72(a); *see also* 28 U.S.C.

§ 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter . . . where it has been

shown that the magistrate judge's order is clearly erroneous or contrary to law.").  An order is

"clearly erroneous if, based on all the evidence, a reviewing court 'is left with the definite and firm conviction that a mistake has been committed,'" *Storms v. United States*, No. 13-CV-0811, 2014 WL 3547016, at *4 (E.D.N.Y. July 16, 2014) (quoting *United States v. Murphy*, 703 F.3d 182, 188 (2d Cir. 2012)), and "is 'contrary to law' when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Weiner v. McKeefery*, No. 11-CV-2254, 2014 WL 2048381, at *3 (E.D.N.Y. May 19, 2014) (internal citation and quotation marks omitted). "This standard is highly deferential, imposes a heavy burden on the objecting party, and only permits reversal where the magistrate judge abused [his] discretion." *Ahmed v. T.J. Maxx Corp.*, 103 F. Supp. 3d 343, 350 (E.D.N.Y. 2015) (internal citations and quotation marks omitted).

Additionally, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). A party's objections to the magistrate judge's R&R must be specific; where a party "makes only conclusory or general objections, or simply reiterates [the] original arguments, the Court reviews the [R&R] only for clear error." *Pall Corp. v. Entegris, Inc.*, 249 F.R.D. 48, 51 (E.D.N.Y. 2008) (quoting *Barratt v. Joie*, No. 96-CV-324, 2002 WL 335014, at *1 (S.D.N.Y. Mar. 4, 2002)). The district judge must evaluate proper objections *de novo* and "may accept, reject, or modify the recommended disposition." Fed. R. Civ. P. 72(b)(3). "[E]ven in a *de novo* review of a party's specific objections, [however,] the court will not consider 'arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance.'" *Brown v. Smith*, No. 09-CV-4522, 2012 WL 511581, at *1 (E.D.N.Y. Feb. 15, 2012) (alterations omitted) (quoting *Kennedy v. Adamo*, No. 02-CV-1776, 2006 WL 3704784, at *1 (E.D.N.Y. Sept. 1, 2006)). A district court is "permitted to adopt those sections of a magistrate judge's report to which no specific objection is made, so long as those sections

are not facially erroneous." *Sasmor v. Powell*, No. 11-CV-4645, 2015 WL 5458020, at *2

(E.D.N.Y. Sept. 17, 2015) (quoting *Batista v. Walker*, No. 94-CV-2826, 1995 WL 453299, at *1

(S.D.N.Y. July 31, 1995)).

## DISCUSSION

### I.    FLSA Collective Action

The defendants object to Judge Locke's determination that conditional certification of a

FLSA collective action is appropriate.  (ECF No. 55 at 3-10.)

A magistrate judge can grant or deny conditional certification of an FLSA collective

action because "such a determination is a non-dispositive matter."  *Chui*, 2020 WL 3618892, at

*1 n.1 (quoting *Bijoux v. Amerigroup N.Y., LLC*, No. 14-CV-3891, 2015 WL 5444944, at *1

(E.D.N.Y. Sept. 15, 2015)); *Neris v. R.J.D. Constr., Inc.*, No. 18-CV-1701, 2019 WL 1458239,

at *2 n.1 (E.D.N.Y. Mar. 29, 2019) (same); *Garriga v. Blonder Builders Inc.*, No. 17-CV-497,

2018 WL 4861394, at *2 n.1 (E.D.N.Y. Sept. 28, 2018) (same).  The standard of review is highly

deferential; thus, I must decide whether Judge Locke's decision is "clearly erroneous or is

contrary to law."  Fed. R. Civ. P. 72(a).

The defendants do not explain why Judge Locke's decision was "clearly erroneous" or

"contrary to law," which is their burden under Rule 72(a).  *See In re Hulley Enters. Ltd.*, 400 F.

Supp. 3d 62, 70 (S.D.N.Y. 2019) ("[M]agistrate judges are afforded broad discretion in resolving

nondispositive disputes and reversal is appropriate only if their discretion is abused." (quoting

*Winfield v. City of New York*, No. 15-CV-5236, 2017 WL 5054727, at *2 (S.D.N.Y. Nov. 2,

2017))); *Grief v. Nassau Cty.*, 246 F. Supp. 3d 560, 564 (E.D.N.Y. 2017) ("Under Rule 72, the

'heavy' burden of proof lies with the moving party, and the highly deferential standard 'only

permits reversal where the magistrate judge abused his discretion.'" (internal alterations omitted)

(quoting *Ahmed*, 103 F. Supp. 3d at 350)).  Instead, the defendants repeat the arguments that they

made to Judge Locke in opposing the plaintiff's motion for conditional certification.  (*Compare*

ECF No. 55 at 5-10 *with* ECF No. 34 at 20-26.)

I have reviewed the sections of Judge Locke's well-reasoned decision and find no error.

**a.  Factual Sufficiency**

The defendants argue that the plaintiff does not offer sufficient evidence to warrant

conditional certification of an FLSA collective action.  (ECF No. 55 at 5, 8; ECF No. 58 at 9-10.)

For instance, the defendants claim that the plaintiff's declaration is "devoid of any specifics" and

otherwise "fail[s] to provide evidence of a factual connection" between the plaintiff and the

FLSA Plaintiffs.  (ECF No. 55 at 8.)

As described above, the plaintiff seeks conditional certification on an FLSA collective

action on behalf of herself and other "similarly situated" employees.  Courts in this circuit apply

a two-step process to determine whether certification is appropriate in these circumstances:

> At step one, the district court permits a notice to be sent to potential opt-in plaintiffs
> if the named plaintiffs make a modest factual showing that they and others together
> were victims of a common policy or plan that violated the law.  At step two, with
> the benefit of additional factual development, the district court determines whether
> the collective action may go forward by determining whether the opt-in plaintiffs
> are in fact similarly situated to the named plaintiffs.

*Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2016) (citing *Myers v. Hertz*

*Corp.*, 624 F.3d 537, 555 (2d Cir. 2010)).  A named plaintiff and an opt-in plaintiff "are similarly

situated, and may proceed in a collective, to the extent they share a similar issue of law or fact

material to the disposition of their FLSA claims."  *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d

502, 516 (2d Cir. 2020).  If they "share legal or factual similarities material to the disposition of

their [FLSA] claims, dissimilarities in other respects should not defeat collective treatment."  *Id.*

(internal quotation marks omitted); *see also Warman v. Am. Nat'l Standards Inst.*, 193 F. Supp.

3d 318, 323 (S.D.N.Y. 2016) ("The relevant issue is not whether the named plaintiff and

potential opt-in plaintiffs are identical in all respects, but, rather, whether they all allegedly were subject to a common employment policy that violated the FLSA." (citing *Myers*, 624 F.3d at 555)).

In the complaint, the plaintiff alleges that the defendants avoided paying employees overtime by changing their timecards to make it appear as though they worked fewer hours than they did, or that they did not work overtime. According to the complaint, Demint used the company's time logging system to subtract and add hours, and also sent text messages to managers in which she instructed them to delete or move employees' hours. In her declaration, the plaintiff describes the defendants' practice of "improperly deducting, deleting, and manipulating hours worked, and meal deductions, and improperly withholding wages," assertions that support the allegations in the complaint. (ECF No. 53 at 18.) "Courts will certify broad [FLSA collective actions] where there is some showing . . . that the employer had uniform company-wide employment practices." *Vasquez v. Vitamin Shoppe Indus. Inc.*, No. 10-CV-8820, 2011 WL 2693712, at *4 (S.D.N.Y. July 11, 2011) (citing *Damassia v. Duane Reade, Inc.*, No. 04-CV-8819, 2006 WL 2853971, at *5 n.9 (S.D.N.Y. Oct. 5, 2006)); *see also Alvarez v. IBM Rests. Inc.*, 839 F. Supp. 2d 580, 584 (E.D.N.Y. 2012) ("At the conditional certification stage, courts merely require substantial allegations that the putative class members were together the victims of a single decision, policy or plan." (internal quotation marks omitted)).

The complaint's allegations are bolstered not only by the plaintiff's declaration, but by her testimony, and that of Michelle Robey, *cf. Jaworski v. Integra Dev. Grp., Inc.*, No. 21-CV-3991, 2021 WL 5591200, at *2 (E.D.N.Y. Nov. 29, 2021) (permitting a factual showing for conditional certification through "pleadings, affidavits, and declarations"), which are factors that also demonstrate that the plaintiff has met the low standard of proof needed for conditional

certification.  *See Myers*, 624 F.3d at 555 (explaining that the required factual showing "should remain a low standard of proof because the purpose of this first stage is merely to determine whether 'similarly situated' plaintiffs do in fact exist" (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997))); *see also Moore v. Eagle Sanitation, Inc.*, 276 F.R.D. 54, 58 (E.D.N.Y. 2011) (explaining that "the evidentiary standard is lenient" at the conditional certification stage); *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) ("The burden for demonstrating that potential Named Plaintiffs are similarly situated is very low at the notice stage." (internal quotation marks omitted)).  Indeed, "[n]umerous courts have granted conditional certification based on the declaration and observations of only one individual."  *Cinar v. R&G Brenner Income Tax LLC*, No. 20-CV-01362, 2021 WL 7366924, at *6 (E.D.N.Y. Sept. 29, 2021) (collecting cases).

      **b.**    **"Modest Plus" Standard**

      The defendants argue that a stricter standard for certification applies because some discovery already occurred.  (ECF No. 55 at 8, 10; ECF No. 58 at 7-9.)

      District courts in this circuit have applied a stricter "modest plus" standard for conditional certification of an FLSA collective action when "discovery with respect to conditional certification has been completed."  *Korenblum v. Citigroup, Inc.*, 195 F. Supp. 3d 475, 482 (S.D.N.Y. 2016); *see also Jose Blas Umana Diaz v. Weinstein Landscaping*, No. 19-CV-6050, 2022 WL 801493, at *3 (E.D.N.Y. Feb. 28, 2022) ("Some district courts in this circuit have begun using a 'modest-plus' standard in cases where some discovery has already occurred prior to the conditional certification motion." (quoting *Gaston v. Valley Nat'l Bancorp*, No. 17-CV-1886, 2018 WL 4158407, at 2 (E.D.N.Y. Aug. 30, 2018))), *report and recommendation adopted*, No. 19-CV-6050, 2022 WL 801322 (E.D.N.Y. Mar. 16, 2022).  Under a "modest plus"

standard, the burden of proof required for conditional certification "increase[s] in proportion to the discovery conducted by the parties." *Korenblum*, 195 F. Supp. 3d at 482.

The parties have not certified that discovery is complete on the issue of conditional certification. The defendants do not explain why the modest plus standard should apply. *See, e.g.*, *Griffin v. Aldi, Inc.*, No. 16-CV-354, 2017 WL 1397320, at *4 (N.D.N.Y. Feb. 22, 2017) (finding that "the discovery with respect to facts relevant to conditional certification [had] clearly not been completed" even though three individuals had been deposed). In any event, the plaintiff meets her burden even under the modest plus standard because the plaintiff's declaration, her testimony and Robey's testimony support her claim that her employer engaged in a practice of changing employees' hours, as described above. *See Korenblum*, 195 F. Supp. 3d at 480 (explaining that courts do "not resolve factual disputes, decide ultimate issues on the merits, or make credibility determinations" when conditionally certifying an FLSA collective action (quoting *In re Penthouse Exec. Club Comp. Litig.*, No. 10-CV-1145, 2010 WL 4340255, at *2 (S.D.N.Y. Oct. 27, 2010))); *Villalta v. 101-11 86 Ave. Corp.*, No. 20-CV-249, 2022 WL 462408, at *6 (E.D.N.Y. Feb. 15, 2022) (same); *Wang v. Kirin Transp. Inc.*, No. 20-CV-5410, 2022 WL 79155, at *10 (E.D.N.Y. Jan. 7, 2022) (same).

c.    **"Desire to Opt-In" Requirement**

I am not persuaded by the defendants' argument that the plaintiff must show that other employees wish to opt-in to her collective action. (ECF No. 55 at 10; ECF No. 58 at 11.) It is not the law in this circuit, and courts in other circuits have hesitated to impose this requirement. *See, e.g.*, *Gortat v. Capala Bros.*, No. 07-CV-3629, 2010 WL 1423018, at *10 (E.D.N.Y. Apr. 9, 2010) ("Although some district courts outside of the Eleventh Circuit have adopted Dybach's 'desire to opt in' requirement, no other Circuit Court has done so, and it is not the law of this

Circuit.  Moreover, this requirement has been strongly criticized by several courts outside the Eleventh Circuit." (collecting cases)), *aff'd*, 568 F. App'x 78 (2d Cir. 2014).

## II.     Class Action

The defendants object to Judge Locke's determination that the plaintiff satisfied the Rule 23(b)(3) requirements for class certification.  (ECF No. 55 at 11-16.)

A district court reviews a magistrate judge's class certification decisions *de novo*.  *See, e.g.*, *Traver v. Lowe's Home Ctrs., LLC*, No. 12-CV-3528, 2016 WL 880169, at *1 (E.D.N.Y. Mar. 1, 2016) (applying *de novo* review to a named plaintiff's Rule 23 motion); *White v. W. Beef Props., Inc.*, No. 07-CV-2345, 2011 WL 6140512, at *2 (E.D.N.Y. Dec. 9, 2011) (same).  But because the defendants make the same arguments they made to Judge Locke when they opposed the plaintiff's motion (*compare* ECF No. 55 at 11-16 *with* ECF No. 34 at 27-39), I review Judge Locke's R&R for clear error.  *See Pall*, 249 F.R.D. at 51 (explaining that when a party makes "only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the [R&R] only for clear error"); *see also Brown v. Colvin*, 73 F. Supp. 3d 193, 197 (S.D.N.Y. 2014) ("[W]hen the objections simply reiterate previous arguments . . . the Court should review the report for clear error.").

Class certification pursuant to Federal Rule of Civil Procedure 23 is a two-step process. First, the court "must be persuaded, 'after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'"  *In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 82 (S.D.N.Y. 2007) (quoting *Gen. Tel Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).  The prerequisites are:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *see, e.g.*, *Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010) (requiring that "each of the requirements set forth in Rule 23(a) be met"); *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*, 546 F.3d 196, 201-02 (2d Cir. 2008) (same).  This circuit recognizes that Rule 23(a) also contains an implicit requirement of "ascertainability," which is "whether the class is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member."  *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015) (internal quotation marks omitted); *see also In re Petrobras Sec.*, 862 F.3d 250, 264 (2d Cir. 2017) ("The ascertainability doctrine that governs in this Circuit requires only that a class be defined using objective criteria that establish a membership with definite boundaries.").

Next, the court must determine whether certification is "appropriate under Rule 23(b)." *In re Grana y Montero S.A.A. Sec. Litig.*, 2021 WL 4173684, at *10 (E.D.N.Y. Aug. 13, 2021); *see also Rosi v. Aclaris Therapeutics, Inc.*, No. 19-CV-7118, 2021 WL 5847420, at *2 (S.D.N.Y. Dec. 9, 2021) (same).  Rule 23(b)(3) permits a class action if the court finds "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

"Rule 23 does not set forth a mere pleading standard."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  "The party seeking class certification bears the burden of demonstrating compliance with Rule 23's prerequisites by a preponderance of the evidence." *Kurtz v. Costco Wholesale Corp.*, 818 F. App'x 57, 60 (2d Cir. 2020) (citing *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 264 (2d Cir. 2016)); *Batalla Vidal v. Wolf*, 501 F. Supp. 3d 117, 134 (E.D.N.Y. 2020) (same).  "The Second Circuit has emphasized that Rule 23 should be given

liberal rather than restrictive construction, and it seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification." *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 124 (S.D.N.Y. 2011) (quoting *Gortat*, 257 F.R.D. at 361); *see also Newkirk v. Pierre*, No. 19-CV-4283, 2020 WL 5035930, at *5 (E.D.N.Y. Aug. 26, 2020) ("[T]he Second Circuit has emphasized that Rule 23 should be given a 'liberal rather than restrictive construction.'" (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 375 (2d Cir. 1997))). "The district court is afforded broad discretion in class certification questions because it is often in the best position to assess the propriety of the class action." *Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61, 68 (S.D.N.Y. 2018) (citing *Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.*, 262 F.3d 134, 139 (2d Cir. 2001)).

I have reviewed Judge Locke's thorough discussion of class certification pursuant to Rule 23(b)(3), and find no error.

### a.     Rule 23(a) Requirements

The defendants object to Judge Locke's finding that the named plaintiff's claims are typical of the claims or defenses of the class (ECF No. 55 at 10-13; ECF No. 58 at 12-13), and that the named plaintiff will fairly and adequately protect the interests of the class.  (ECF No. 55 at 16.)

Typicality requires that a class representative's claims "be typical of those of the class, and is satisfied when each member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Barrows v. Becerra*, No. 20-CV-1642, 2022 WL 211089, at *8 (2d Cir. Jan. 25, 2022) (internal quotation marks and citation omitted).  "Typicality ensures that class representatives have the proper incentive to prove all elements of the cause of action that would be presented by individual members of the class if they were pursuing their own individualized actions." *Hill v. City of New York*, No. 13-

CV-6147, 2019 WL 1900503, at *6 (E.D.N.Y. Apr. 29, 2019) (citing *Floyd v. City of New York*, 283 F.R.D. 153, 175 (S.D.N.Y. 2012)).  Typicality is "not highly demanding," *Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 155 (S.D.N.Y. 2002) (internal quotation marks and citation omitted), and is usually met "irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).

The plaintiff and the putative class members allege that they worked as hourly manual workers, and that the defendants did not pay them overtime, provide spread-of-hours pay, pay them wages on at least a weekly basis, or provide accurate wage statements and notices when they were hired, all of which violate the NYLL.  In short, their claims involve "the same type of injury under the same legal theory as the rest of the Rule 23 Plaintiffs," which is enough to establish typicality.  (ECF No. 53 at 23); *see also Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011) ("[T]ypicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." (quoting *Robidoux*, 987 F.2d at 936)).

The defendants say that the plaintiff is atypical because she was a manager, which makes her "subject to important, unique defenses" that do not apply to non-managerial workers.  (ECF No. 55 at 11-13.)  Typicality is not satisfied "where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Briceno v. USI Servs. Group, Inc.*, No. 09-CV-4252, 2012 WL 4511626, at *7 (E.D.N.Y. Sept. 28, 2012) (citing *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)); *see also Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000) (explaining that class certification is inappropriate "where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation").  The defendants identify only one such defense—they

argue that the plaintiff is not subject to NYLL § 191(1)(a).  (ECF No. 55 at 13; ECF No. 58 at 13.)  But this is not a unique defense that threatens to become the focus of the litigation.  The complaint specifically alleges that the named plaintiff has a claim under NYLL § 191(1)(a), just like other members of the proposed class, because the defendants "failed to pay" them "all wages earned at least as frequently as a weekly basis."  (ECF No. 1 ¶ 83.)  Whether the named plaintiff's claim succeeds depends on the same theory as the other class members—that the defendants made it a practice not paying their manual workers on a weekly basis.[5]

The defendants also assert that the plaintiff made a "unique allegation"—that Demint "wrongfully withheld all of any of the money that Plaintiff had expressly requested that she hold and use to pay Plaintiff's expenses."  (ECF No. 55 at 13; ECF No. 58 at 13.)  In fact, the plaintiff claims only that the defendants paid her wages directly to Demint, and that Demint deposited portions of those wages in the plaintiff's account "from time-to-time and at [Demint's] whim." (ECF No. 1 ¶ 41.)  The plaintiff does not allege that Demint held those amounts at her request, or released funds to pay her expenses.  Even if the defendants had characterized the plaintiff's claim accurately, they do not explain why these allegedly unique allegations are so significant that they "threaten to become the focus of the litigation."  *Briceno*, 2012 WL 4511626, at *7.

---

[5] NYLL § 191(1)(a) only applies to "manual workers," and there is a factual dispute whether the plaintiff had a manual worker's responsibilities even if she was nominally a "manager."  The plaintiff declares that "virtually 100%" of her work as a manager was spent "completing manually laborious tasks," such as "cooking, cleaning, serving food, checking food temperatures, and handling store equipment orders." Robey testified that "managers" still generally served as manual workers; 90 percent of managers' responsibilities were non-administrative, which Robey described as "very hands-on" and "doing the same type of work as the crew people," who were all manual workers.  However, the defendants cite declarations in which other employees assert that the majority of the plaintiff's responsibilities were administrative, and not those of a manual worker.  I do not decide whether the plaintiff was a manual worker for purposes of her Section 191 claim because her claim is based on same theory as other class members, and the defendants have not shown that the plaintiff is subject to unique defenses.

The defendants argue that the plaintiff would not adequately protect the class's interests. (ECF No. 55 at 16; ECF No. 58 15-16.)  To fulfill the adequacy requirement under Rule 23(a)(4), a class representative must ensure "that the members of the class possess the same interests, and that no fundamental conflicts exist among the members." *Charron v. Wiener*, 731 F.3d 241, 249 (2d Cir. 2013); *see also Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) ("The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent.").  The adequacy prong also requires courts to ensure that "class counsel is qualified, experienced, and generally able to conduct the litigation." *Marisol A.*, 126 F.3d at 378 (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)).

The defendants maintain that the plaintiff cannot adequately protect the class's interests because she was a manager, because her "statements regarding Defendants' wage practices have been refuted by other employees," and because she has a history of substance abuse and assault. (ECF No. 55 at 16; ECF No. 58 at 15-16.)  These arguments are unconvincing.  The fact that the plaintiff was a manager does not mean that she is an inadequate class representative. *See Carollo v. United Cap. Corp.*, 528 F. Supp. 3d 37, 56 (N.D.N.Y. 2021) (finding that "defendants' objection that Carollo was a manager for part of her employment at the hotel [did] not defeat her adequacy as a representative").  Moreover, the plaintiff alleges—and the defendants do not deny—that she was also a grill-line worker and was paid hourly, which aligns with the class's interests, even if she became a manager. *See also Lawrence v. NYC Med. Practice, P.C.,* No. 18-CV-8649, 2021 WL 2026229, at *10 (S.D.N.Y. May 20, 2021) (Named plaintiffs satisfied Rule 23's adequacy prong where they were subject to similar "policies and practices regarding compensation and overtime" and did not have "any conflict of interest relating to the subject

matter of the litigation."); *Omar v. 1 Front St. Grimaldi, Inc.*, No. 16-CV-5824, 2019 WL

1322614, at *11 (E.D.N.Y. Jan. 8, 2019) (finding the named plaintiff, who "experienced wage

notification violations due to defendants' policies" and "suffered lost wages due to defendants'

policies" to be an adequate class representative).

Nor are the defendants' arguments about the plaintiff's background compelling.  It is

true, as the defendants point out, that the class representative must be credible.  "Where the court

finds the class representative is not credible, adequacy of representation is absent." *Decastro v.*

*City of New York*, No. 16-CV-3850, 2019 WL 4509027, at *12 (S.D.N.Y. Sept. 19, 2019)

(quoting *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 41 (E.D.N.Y. Jan. 31, 2008)).  The

the plaintiff's statements are corroborated not only by her testimony, but by Robey's testimony.

The fact that other employees might disagree with the allegations in the complaint does not mean

that the plaintiff is unfit to be the class representative.  Moreover, neither substance abuse nor a

criminal record, in and of themselves, means that the plaintiff is incredible.  In fact, in Robey's

telling, the defendants' willingness to take on employees who struggled with addiction was a

point of pride.  She averred in her declaration that she and Demint "pride ourselves on

supporting the community" and hiring people for their businesses who are "recovering from

substance abuse."  (ECF No. 38 ¶ 22.)  The "moral character" of a potential representative may

be considered, but inquiring into a representative's personal qualities "is not an examination into

their moral righteousness, but rather an inquiry directed at improper or questionable conduct

arising out of or touching upon the very prosecution of the lawsuit." *Gucciardo v. Titanium*

*Constr. Servs., Inc.*, No. 16-CV-1113, 2017 WL 3738777, at *5 (S.D.N.Y. Aug. 30, 2017)

(quoting *Friedman-Katz v. Lindt & Sprungli (USA), Inc.*, 270 F.R.D. 150, 160 (S.D.N.Y. 2010)).

Even if the defendants' allegations about the plaintiff were true, "they do not touch upon the

prosecution of the lawsuit, which at its core is about Defendants' alleged policy of failing to pay overtime wages." *Id.*; *see also Chime v. Peak Sec. Plus, Inc.*, 137 F. Supp. 3d 183, 211 (E.D.N.Y. 2015) (noting that a "class representative need not be morally upstanding; rather, he or she must not have damaged his or her credibility regarding those issues that are central to the action" (internal quotation marks omitted)); *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 372 (S.D.N.Y. 2007) (finding that "the circumstances of [the plaintiff's] termination are [not] relevant to whether he was paid overtime wages or less than the minimum wage during the period while he was employed").[6]

### b.      Rule 23(b) Requirements

Relying on the fact that the plaintiff was both a manual worker and a manager, the defendants object to Judge Locke's finding that predominance is satisfied.  (ECF No 55 at 13-14; ECF No. 58 at 14.)  They also challenge Judge Locke's finding that superiority is satisfied, arguing that it is more efficient for class members to bring their NYLL § 191 and § 195 claims on an individual basis through the New York Department of Labor, rather than to proceed collectively as a Rule 23(b)(3) class action.  (ECF No. 55 at 15; ECF No. 58 at 15.)

Predominance is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."  *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (quoting *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013)).  The predominance requirement "imposes a 'far more demanding' inquiry into the common issues which serve as the

---

[6] The defendants do not take issue with Judge Locke's discussion regarding numerosity under Rule 23(a)(1), commonality under 23(a)(2), adequacy of the named plaintiff's counsel under 23(a)(4), or ascertainability.  (*See generally* ECF No. 55.)

basis for class certification." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 81 (2d Cir. 2015) (quoting *Amchem*, 521 U.S. at 623-24).

As Judge Locke found, the "central factual issues" in this case are whether the defendants "altered employee time records or deleted hours without notifying employees of those alterations or compensating them for the deleted hours," whether the defendants' employees were all manual workers, whether the employees were paid on a bi-weekly rather than weekly basis, and whether the defendants provided their employees with accurate wage statements and notices. (ECF No. 53 at 28.)  These are all questions susceptible to generalized proof, even if there is a factual dispute regarding the scope of the named plaintiff's non-administrative duties when she worked as a manager.  A determination that all of the defendants' employees were manual workers, including those who, like the plaintiff, were also managers, will determine whether the named plaintiff's claims succeed on a class-wide basis.  For these reasons, predominance is satisfied.

A court determining superiority must consider class members' "interests in individually controlling the prosecution or defense of separate actions;" the extent and nature of "any litigation concerning the controversy already begun;" the desirability of "concentrating the litigation of claims in the particular forum;" and the "likely difficulties in managing a class action."  Fed. R. Civ. P. 23(b)(3).  To satisfy the superiority requirement, the moving party must show that the class action presents economies of "time, effort and expense, and promote[s] uniformity of decision."  *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d at 130.  The superiority requirement is designed to avoid "repetitious litigation and possibility of inconsistent adjudications."  *B & R Supermarket, Inc. v. Mastercard Int'l Inc.*, No. 17-CV-2738, 2021 WL 234550, at *33 (E.D.N.Y. Jan. 19, 2021) (quoting *In re Air Cargo Shipping Servs. Antitrust*

*Litig.*, No. 06-MD-1175, 2014 WL 7882100, at *64 (E.D.N.Y. Oct. 15, 2014), *report and recommendation adopted*, No. 06-MD-1775, 2015 WL 5093503 (E.D.N.Y. July 10, 2015)).

The defendants say only that the New York Department of Labor can provide a faster resolution, with the same potential liquidated damages, without the need for extensive discovery or otherwise burdening the Court.  (ECF No. 55 at 15; ECF No. 58 at 15.)[7]  However, the potential claims under NYLL § 191 and § 195 are relatively small in this case.  Someone making a Section 191 claim for underpayment can recover only "the full amount of any underpayment," along with fees and interest, as well as "an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due," unless the employer proves a good faith basis to believe that its underpayment was in compliance with the law.  N.Y. Lab. Law § 198(1-a).  Likewise, someone making a Section 195 claim for failure to provide an accurate wage statement or notice can recover only up to $5,000, plus fees and costs.  N.Y. Lab. Law §§ 198(1-b), (1-d).[8]

A Rule 23(b)(3) action is superior to individual claims with the New York Department of Labor because a class action would "facilitate the redress of claims where the costs of bringing individual actions outweigh the expected recovery."  *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d at 130 (citing *Amchem*, 521 U.S. at 617); *see also Moreira v. Sherwood Landscaping Inc.*, No. 13-CV-2640, 2015 WL 1527731, at *14 (E.D.N.Y. Mar. 31, 2015) (explaining that courts "routinely" hold that a class action is superior when "potential class members are aggrieved by the same policy, the damages suffered are small in relation to the expense and

---

[7] The defendants note that the plaintiff's counsel "would be in the position to recover attorney's fees in the event of a settlement or judgment," but do not explain why this is relevant for superiority analysis.  (ECF No. 55 at 15.)

[8] For violations before February 27, 2015, the defendants are liable only up to a statutory cap of $2,500.  N.Y. Lab. Law §§ 198(1-b), (1-d) (Feb. 26, 2015).

burden of individual litigation and many potential class members are currently employed by Defendant" (collecting cases)); *Stinson v. City of New York*, 282 F.R.D. 360, 383 (S.D.N.Y. 2012) (explaining that "the relatively small amount of damages suffered by each individual plaintiff decreases the possibility of individual lawsuits being filed"); *Jermyn v. Best Buy Stores, L.P.*, 256 F.R.D. 418, 436 (S.D.N.Y. 2009) ("Each class member's claim is too small to warrant bringing an individual lawsuit.  A class action will also save enormous litigation costs for all parties and allow them to efficiently prosecute theirs claims and defenses.").

The other Rule 23(b)(3) factors also weigh in favor of finding superiority.  First, there is no evidence of other pending litigation involving proposed class members.  Second, concentrating litigation in this forum makes sense because the defendants' business is here, potential class members purportedly worked here, and as Judge Locke observed, "this Court is familiar with the action, which has been pending here for more than a year."  (ECF No 53 at 30.)  Finally, manageability is not an issue because the potential class members' claims are identical.

## III.   Notice

The defendants object to the plaintiff's proposed notice to members of the FLSA collective action and members of the Rule 23(b)(3) class action, as well as Judge Locke's recommendation that the defendants disclose their employees' contact information.  (ECF No. 55 at 16-20.)

Neither the FLSA nor any court has expressly outlined "what form court-authorized notice should take nor what provisions the notice should contain."[9]  *See Moore*, 276 F.R.D. at 58

---

[9] A different standard applies to notice for Rule 23(b)(3) class members.  Federal Rule of Civil Procedure 23(c)(2)(B) requires such notice to state in "plain, easily understood language" "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members [ ]."  *Id.*  Rule 23(c)(2)(B) also

(quoting *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 323 (S.D.N.Y. 2007)).  It is well settled, however, that "[t]he form of a court-authorized notice and provisions contained in it are left to the broad discretion of the trial court."  *Sobczak v. AWL Indus., Inc.*, 540 F. Supp. 2d 354, 364 (E.D.N.Y. 2007); *see also Hernandez v. Immortal Rise, Inc.*, No. 11-CV-4360, 2012 WL 4369746, at *6 (E.D.N.Y. Sept. 24, 2012) ("Courts have broad discretion to craft appropriate notices that effectuate the overarching policies of the collective suit provisions [of the FLSA] and provide employees with accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." (internal quotation marks omitted)).  I have reviewed Judge Locke's conclusions about notice and find no error.

### a. Content of Initial Notice

The defendants object to Judge Locke's finding that the proposed notice does not need to include the defense counsel's contact information, or to advise the potential opt-in plaintiffs that they may be required to participate in discovery and pay for the defendants' costs if the plaintiffs do not succeed.  (ECF No. 55 at 16-17; ECF No. 58 at 16-17.)

"There is a divide of authority on whether defense counsel's contact information should be included in an opt-in notice."  *Jibowu v. Target Corp.*, No. 17-CV-3875, 2020 WL 7385695, at *4 (E.D.N.Y. Dec. 16, 2020).  On one hand, courts in this circuit "have generally concluded that such information is appropriate for inclusion in a notice of collective action."  *Anjum v. J.C. Penny Co.*, No. 13-CV-460, 2015 WL 3603973, at *14 (E.D.N.Y. June 5, 2015) (quoting *Slamna*

---

requires a court to "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  The defendants' objections do not discuss these criteria; indeed, all of the defendants' authorities involve FLSA collective actions rather than Rule 23 class actions.  (ECF No. 55 at 16-19.)  I find that the proposed notice satisfies Rule 23(c)(2)(B) criteria.

*v. API Rest. Corp.*, No. 12-CV-757, 2013 WL 3340290, at *5 (S.D.N.Y. July 2, 2013)); *accord Finnigan v. Metro. Transp. Auth.*, No. 19-CV-516, 2020 WL 1493597, at *4 (E.D.N.Y. Mar. 26, 2020); *Escano v. N & A Produce & Grocery Corp.*, No. 14-CV-4239, 2015 WL 1069384, at *2 (S.D.N.Y. Mar. 11, 2015); *see also Cano v. Four M Food Corp.*, No. 08-CV-3005, 2009 WL 5710143, at *11 (E.D.N.Y. Feb. 3, 2009) (agreeing that "both counsel's contact information should be included in the notice"); *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 108 (S.D.N.Y. 2003) (same).

Other courts have concluded that "it is appropriate that defendants' counsel not be listed as contacts on the form of notice," because between plaintiffs' counsel and defendants' counsel, "[o]nly plaintiffs' counsel can potentially represent the individuals to whom the notice is mailed, and only they should be privy to certain sensitive information that may otherwise fall within the attorney-client privilege." *Chhab v. Darden Rests., Inc.*, No. 11-CV-8345, 2013 WL 5308004, at *16 (S.D.N.Y. Sept. 20, 2013); *see also Gurrieri v. County of Nassau*, No. 16-CV-6983, 2019 WL 2233830, at *11 (E.D.N.Y. May 23, 2019) ("Inclusion of defense counsel's contact information is not required to render an FLSA notice fair, and is likely to create confusion rendering distribution or collection of consent to join forms less effective." (citing *Chhab*, 2013 WL 5308004, at *16)); *Arciello v. County of Nassau*, No. 16-CV-3974, 2017 WL 4998074, at *7 (E.D.N.Y. Oct. 30, 2017) (same); *Cabrera v. Stephens*, No. 16-CV-3234, 2017 WL 4326511, at *8 (E.D.N.Y. Sept. 28, 2017) (same).

Judge Locke's recommendation not to include defense counsel's contact information is not clearly erroneous because district courts are split. *See, e.g.*, *Peterkin v. FedEx Freight, Inc.*, No. 20-CV-4439, 2021 WL 4520032, at *3 (E.D.N.Y. Oct. 4, 2021) ("Given this split, and the fact that the Second Circuit has not spoken to the issue, I need not delve too deeply into the

merits.  I conclude that the R&R is not the product of 'clear error,' and accordingly adopt its conclusion." (internal citation omitted)).  When there is an intra-circuit split, a court "cannot say that the magistrate judge's determination here rises to the level of clear error." *Bowie v. Woodruff*, No. 918-CV-266, 2019 WL 5445519, at *1 (N.D.N.Y. Oct. 23, 2019) (citing *Warr v. Liberatore*, No. 13-CV-6508, 2018 WL 3237733, at *5 (W.D.N.Y. July 3, 2018)); *see also Li Ping Fu v. Pop Art Int'l, Inc.*, No. 10-CV-8562, 2011 WL 6092309, at *1 (S.D.N.Y. Dec. 7, 2011) (finding no clear error when an R&R "notes that courts in this Circuit are split").

Moreover, including defense counsel's contact information without additional instruction—like an explicit warning not to contact defense counsel if an individual decides to join the lawsuit as a plaintiff—would create confusion and render the notice less effective. *See, e.g.*, *Agerbrink v. Model Serv. LLC*, 2016 WL 406385, at *6 (S.D.N.Y Feb. 2, 2016) (holding that because it was inappropriate for the defendant to suggest that potential plaintiffs contact defense counsel with questions about the litigation, defense counsel's contact information had to be moved to a subsection titled "What is [Defendant's] Position")*; cf. Jibowu*, 2020 WL 7385695, at *5 (finding that including contact information does not create confusion or render notice less effective "given that it would be placed in a section titled 'What Happens If I Do Not Join?' and after an explicit warning to employees—in bolded italics—not to contact defense counsel if they decide to join the lawsuit"); *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 451 (S.D.N.Y. 2011) (allowing the inclusion of defense counsel's contact information, but under a separate heading of "Attorneys for Defendants," rather than a section titled "Further Information," so as "to avoid unnecessary confusion").

There is also a district split on the question of including language about costs.  "Courts in this Circuit have found references to costs 'unnecessary and potentially confusing' to opt-in

plaintiffs." *Racey v. Jay-Jay Cabaret, Inc.*, No. 15-CV-8228, 2016 WL 3020933, at *9

(S.D.N.Y. May 23, 2016) (quoting *Sexton v. Franklin First Fin., Ltd.*, No. 08-CV-4950, 2009

WL 1706535, at *12 (E.D.N.Y. June 16, 2009)).  Such language may pose "an in terrorem effect

that is disproportionate to the actual likelihood that costs or counterclaim damages will occur in

any significant degree." *Guzman v. VLM, Inc.*, No. 07-CV-1126, 2007 WL 2994278, at *8

(E.D.N.Y. Oct. 11, 2007).  However, other courts permitted notices that warn potential plaintiffs

about litigation costs.  *See, e.g.*, *Moore*, 276 F.R.D. at 61 (finding it reasonable to include a

warning that the plaintiffs may "pay costs if they do not prevail"); *Bah v. Shoe Mania, Inc.*, No.

08-CV-9380, 2009 WL 1357223, at *4 (S.D.N.Y. May 13, 2009) (same).  Given this split of

authority, Judge Locke's determination not to include this language is obviously not clear error.

The defendants also maintain that the notice does not "advis[e] that potential opt-in

plaintiffs may be required to participate in discovery."  (ECF No. 55 at 17.)  But it clearly does:

> If you choose to "opt-in" to the collective action, you will be joining the case in its
> entirety and you most likely will be required to provide information and answer
> questions relating to your employment with Defendants.  In that case, you may be
> required to testify at a deposition or at a trial, respond to written questions, and/or
> produce documents relevant to the case.  For this reason, if you join the collective
> action, you should preserve all documents relating to your employment with the
> Defendants that are currently in your possession.

(ECF No. 32-7 at 5.)  The defendants do not explain how this section is insufficient, or explain

why Judge Locke's permitting this language rises to the level of clear error.

**b.  Means of Communication**

The defendants claim that Judge Locke should not have permitted alternative forms of

notice—notice by e-mail, text message and on-site posting.  They argue that the plaintiff has not

shown such methods are necessary, especially since the defendants can provide accurate mailing

addresses for current employees and because notice by e-mail can be misleading or create "risks

of distortion."  (ECF No. 55 at 17-18; ECF No. 58 at 17-18.)

Objections to notice by e-mail and text message are "quite outdated and not in touch with the reality of current life in the United States of America." *Millin v. Brooklyn Born Chocolate, LLC*, No. 19-CV-3346, 2020 WL 2198125, at *3 (E.D.N.Y. May 6, 2020).  Electronic messaging in addition to first class mail "reasonably further[s] the purpose of notice of a collective action under the FLSA." *Cabrera*, 2017 WL 4326511, at *8; *see also Sanchez v. Salse Con Fuego, Inc.*, No. 16-CV-473, 2016 WL 4533574, at *7 (S.D.N.Y. Aug. 24, 2016) (explaining that first class mail and e-mail "may both serve as efficient means of ensuring that potential opt-in plaintiffs receive timely notice, and are therefore approved").  Courts also routinely approve requests to post notice on employee bulletin boards "and in other common areas, even where potential members will also be notified by mail." *Cabrera*, 2017 WL 4326511, at *8 (quoting *Rosario v. Valentine Ave. Discount Store, Co., Inc.*, 828 F. Supp. 2d 508, 521 (E.D.N.Y. 2011)); *Whitehorn*, 767 F. Supp. 2d at 449 (same).

To the extent that the defendants rely on older cases—*Gordon v. Kaleida Health*, No. 08-CV-378, 2009 WL 3334784 (W.D.N.Y. Oct. 14, 2009) and *Hintergerger v. Cath. Health Sys.*, No. 08-CV-380S, 2009 WL 3464134 (W.D.N.Y. Oct. 21, 2009)—those courts found only that the request for alternative forms of notice was "premature" based on the facts of those cases.  *See Gordon*, 2009 WL 3334784, at *11; *Hintergerger*, 2009 WL 3464134, at *13.  The defendants do not make a similarly fact-based objection.  Instead, they assert that it is "premature" to use alternative forms of notice, like on-site posting, because some employees will receive the same notice by mail.  (ECF No. 58 at 17-18.)  The defendants also do not reconcile older case law with more recent decisions that clearly encourage more modern forms of communication.  For these reasons, Judge Locke's decision to allow these alternative forms of notice was appropriate.

### c.   Reminder Notice

The defendants argue that a reminder notice is not necessary because employees will already receive the same notice by mail.  (ECF No. 55 at 18; ECF No. 58 at 18.)

"Courts in this district have routinely authorized such reminder notices." *Ballast v. Workforce7 Inc.*, No. 20-CV-3812, 2021 WL 5999202, at *9 (S.D.N.Y. Dec. 20, 2021); *see also Williams v. Movage, Inc.*, No. 17-CV-2628, 2018 WL 1940435, at *10 (S.D.N.Y. Apr. 24, 2018) (collecting cases).  Reminder notices are appropriate "[g]iven that notice under the FLSA is intended to inform as many potential plaintiffs as possible of the collective action and their right to opt-in[.]" *Williams*, 2018 WL 1940435, at *9 (quoting *Chhab*, 2013 WL 5308004, at *16). Thus, Judge Locke's decision that the plaintiff could send a reminder notice was correct.

### d.   Disclosure of Employees' Contact Information

The defendants object to Judge Locke's recommendation that they disclose their employees' e-mail addresses and phone numbers because it would violate these employees' privacy, and because the plaintiff did not show why anything besides an employee's last known mailing address is necessary.  (ECF No. 55 at 18-19; ECF No. 58 at 16-17.)

"In general, it is appropriate for courts in collective actions to order the discovery of names, addresses, telephone numbers, e-mail addresses, and dates of employment of potential collective members." *Lora v. To-Rise, LLC*, No. 16-CV-3604, 2017 WL 11604705, at *19 (E.D.N.Y. July 18, 2017) (collecting cases).  "Disclosure of the names, addresses, telephone numbers, and e-mail addresses of putative class members is commonplace in this district." *Fa Ting Wang v. Empire State Auto Corp.*, No. 14-CV-1491, 2015 WL 4603117, at *14 (E.D.N.Y. July 29, 2015); *see also Puglisi v. TD Bank, N.A.*, 998 F. Supp. 2d 95, 102 (E.D.N.Y. 2014) ("In regard to requests for names, last known addresses, telephone numbers (both home and mobile), e-mail addresses, and dates of employment, courts often grant this kind of request in connection

with a conditional certification of an FLSA collective action." (internal quotation marks and citations omitted)).  For these reasons, Judge Locke was right to require that the defendants disclose "a computer-readable data file containing the names, last known mailing addresses, all known home and mobile telephone numbers, all known e-mail addresses, work locations, and dates of employment of all crew members, assistant managers, and managers who worked for Defendants between December 1, 2017 and March 1, 2020."  (ECF No. 53 at 41.)

## IV.    Statute of Limitations

Aside from stating that Judge Locke "misapprehended the facts" with respect to the applicable statute of limitations (*see* ECF No. 55 at 2-3), the defendants do not object to Judge Locke's decision about the applicable statute of limitations for FLSA and NYLL claims.  There is no clear error in Judge Locke's thorough decision.

## CONCLUSION

For these reasons, I adopt Judge Locke's R&R in its entirety.

**SO ORDERED.**

s/Ann M. Donnelly
_____
ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
         March 30, 2022